## Staton v. Lyons et al.

Oct. 17, 1939.

Rehearing Denied Dec. 13, 1939.

W. C. Hamilton and M. C. Redwine for appellant.

G. C. Ewing, J. J. Winn and R. H. Winn for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Welda Staton, is appealing from a judgment rendered in favor of Lula Lyons, administratrix of the estate of R. G. Lyons, deceased, and the heirs of R. G. Lyons, wherein it was adjudged that the petition of the appellant, who was the plaintiff below, be dismissed, and that the appellees be quieted in their title as against the claims of the appellant to the boundary of land in dispute and that the appellees recover nothing on their claim for timber. As to the principal ground of controversy counsel for the appellant sets forth in their brief that: "As we view it, the main question for the Court to determine in this proceeding is: Where is the location of the corner, mentioned in plaintiff's (appellant's) deed as Wolfe Pen Branch; and mentioned in defendant's (appellee's) deed as White Oak Corner, and the Nick McCarty line?"

It is contended that the preponderance of the evidence was in favor of the appellant; that certain leases signed by Staton to supervise the tract of land now belonging to the appellees do not make out a case of estoppel; and that the deed under which R. G. Lyons claimed the land is champertous and void. Both parties make claim to the land in dispute by virtue of adverse possession.

Staton's claim to the land in dispute is by virtue of a deed executed to him by Nick McCarty in 1917. This deed called for 100 acres of land and gave the description of the land by calls and distances, as well as by natural objects. The survey does not close when the calls and distances are followed. It is appellant's contention that the white oak corner on the north side of Wolfe Pen Branch called for in his deed is at the point where two of the lines of the boundary will meet if extended. For the sake of convenience we will refer to these lines as Line No. 1 and Line No. 2. Line No. 1 runs from a white oak stump in Piersall's line S. 71 E. 160 poles. Line No. 2 runs from a stone in Caney Road S. 28¾ E. 227 poles. The appellant contends that Line No. 1 should be extended 88 poles and Line No. 2 60 poles.

Staton brought this action in the fall of 1933 against R. G. Lyons to collect $250 for timber which he claimed Lyons had cut on his land, and for $100 damages to the land. In 1935 Staton filed a second amended petition in which he set forth that, by inadvertence and oversight of the draftsman, part of his land had been omitted from the original description in the deed filed with his petition and amended petition. The second amended petition then states:

"That including the land described, *that further boundary* containing 51 acres, owned by and a part of the general boundary in the aggregate 159 acres, * * *"

There follows a description of the 159 acre boundary which was developed by the extension of the two lines referred to above. While the pleadings in the record show that there are 51 acres of land in dispute, counsel for appellant state in their brief that there are actually only 43 acres in dispute. R. G. Lyons died in 1936, and the action was revived as to the appellees.

Line No. 1 was originally a part of the dividing line

between a large tract of land owned by the Woolley heirs and another large tract referred to as the Ewing furnace tract. Staton's land was carved from the north-west corner of the Woolley tract. While there is some conflict in the evidence on the point, we think it is clear that the point where the two extended lines meet is on the south side of Wolfe Pen Branch on or near the old line dividing the Woolley and the Ewing furnace tracts.

The comparable calls and distances to Lines No. 1 and No. 2 as found in the deed under which the appellees base their claim to the land are respectively N. 69¾ W. 157 to a white oak stump in Piersall's line and S. 15½ E. 230 poles to a white oak corner to McCarty. It might be well to point out at this time that the appellees' plea of estoppel is based upon the fact that the contract under which Staton leased the land now owned by them contained the description given in their deed.

If the course of Line No. 1 is changed from S. 30¼ to S. 16½, Staton's survey will close because it is 227 poles from the stone in the road to the end of Line No. 2 coming from the white oak stump in Piersall's line. This gives Staton a boundary of 108 acres, whereas his deed called for 100 acres. Furthermore, the two lines forming the boundary of his tract where it joins the land of the appellees would conform very closely to the two lines referred to in their deed.

We have examined this record carefully and have given close attention to the testimony for the appellant, with the view of attempting to locate definitely the corner referred to as "an oak tree on the north side of Wolfe Pen Branch in Ewing furnace tract line." Obviously, Line No. 1 will not reach the Ewing furnace tract line unless its course is changed as pointed out above, or it is extended. We have frequently held that courses and distances must give way to natural objects in a deed, but the natural objects must be definitely located. As pointed out in Gilbert v. Parrott, 168 Ky. 599, 182 S. W. 859, where the proof shows two or more natural objects which might fill the description, the one will be taken which appears to carry out the intention of the parties to the deed, and which most nearly conforms to the courses and distances, as well as the quantity of land to be conveyed. There is proof also that Staton tried to buy the timber on the land in dispute in 1928.

In the case before us there is sharp conflict in the proof as to the location of the white oak corner on the north side of Wolfe Pen Branch in the Ewing furnace tract line. There is some testimony for the appellees that a white oak was found in the Ewing furnace tract line 160 poles from the white oak stump in Piersall's line. However, the appellant offered considerable testimony to the effect that there was no white oak at that point. A number of witnesses testified for the appellant. While some of them were indefinite as to the location of the disputed corner other than to testify that it was in Wolfe Pen Branch, or that they had heard it was in the Branch, several of them testified as to the location of the corner. Suffice it to say, however, that they were not in agreement as to the exact location of the corner. There is testimony that the corner was on the north side of the Branch, on the south side of it, in it, a few feet from it, that a white oak stump was found at the place, that a depression in the ground was found that looked as though a tree had been there, and that the tree had burned. We have noted, however, that the two extended lines meet at a point on the south side of Wolfe Pen Branch. We have no hesitancy in saying, therefore, that we think that the appellant has failed to locate with sufficient definiteness the corner to which he claims the two lines should be extended.

Numerous cases have been cited by the appellant in support of his contention that courses and distances must give way to natural objects. This rule was first laid down in the case of Beckley v. Bryan, 2 Ky. (Sneed) 91. Shortly after that case was decided the Court had before it in the case of Preston's Heirs v. Bowmar, 2 Bibb 493, a situation in which it was held that course should yield to a distance. There is a discussion of the general rule laid down in the Beckley case and some of the exceptions thereto, including that discussed in the Preston's Heirs case, in the case of Cornett v. Kentucky River Coal Company, 175 Ky. 718, 195 S. W. 149. In the Cornett case the survey was closed by changing a course rather than a distance called for, as was done in the Preston's Heirs case.

We have noted that appellant's survey will close by changing the course of Line No. 1 from S. 30¼ to S. 16½, no change in the distance of 227 poles being necessary, and also that the boundary will contain 108

acres, whereas the deed called for 100 acres. We are of the opinion, therefore, in the light of the circumstances of the case which have been discussed herein that the chancellor correctly held that the parcel of land in dispute belonged to the appellees as against the claims of the appellant. We do not deem it necessary to discuss other points raised in view of the conclusion reached.

Wherefore, for the reasons given herein, the judgment is affirmed.